# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT FARBAK, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08 C 7195 |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Martin C. Ashman |
| TRANSPORT SERVICE CO., | ) | |
| a corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This is a Family Medical Leave Act ("FMLA") case. Robert Farbak ("Farbak") sued

Transport Service Co. ("Transport"), in 2006, alleging that Defendant violated the FMLA, 29

U.S.C. § 2601 *et seq.*, when it terminated him upon his return from leave taken under the FMLA.

Defendant filed a Motion for Summary Judgment on March 5, 2010.[1] The parties have consented

to have this Court conduct any and all proceedings in this case, including the entry of final

judgment. 28 U.S.C. § 636(c); N.D. Ill. R. 73.1. For the reasons stated below, the Court grants

Defendant's motion.

---

[1] Transport also filed, on April 12, 2010, a Motion to Strike Portions of Plaintiff's Response to Defendant's Statement of Uncontested Facts in Support of Defendant's Motion for Summary Judgment ("Motion to Strike"). This motion sought to strike Farbak's responses to the following paragraphs in Transport's Statement of Facts: 15, 23, 28, 38, 44, and 53. The Court incorporates this Motion to Strike into its Opinion.

## I. Background

Farbak was the Midwest Terminal Manager for Transport—a trucking company with headquarters in Oakbrook, Illinois—from January 14, 2002, until May 9, 2008. (Pl.'s Resp. To Def.'s Statement of Facts ("Pl.'s Resp. SOF") ¶¶ 1–2.) Transport had nine terminals that made up the Chemical division. (*Id.* at ¶ 10.) Farbak worked at the terminal located in Joliet, Illinois ("the Joliet facility"). (*Id.* at ¶ 9.) During his tenure, Farbak was managed the entire Joliet facility, where truck drivers, tank washers, water treatment workers, office personnel, and dispatchers reported to him. (*Id.* at ¶ 7–9.) Farbak was charged with managing the Joliet facility cost effectively, working to increase revenues and lower operating costs. (*Id.* at ¶ 7.) To accomplish this, he recruited truck drivers at job fairs and prepared advertisements for truck drivers that would be posted in periodicals. (Def.'s Reply to Pl.'s Statement of Facts ("Def.'s Reply SOF") ¶¶ 10–11.)

From January 14, 2002, until June of 2007, Terry Wheelock ("Wheelock") supervised Farbak. (Pl.'s Resp. SOF ¶ 11.) Wheelock gave positive reviews of Farbak on several occasions. In 2005, Wheelock wrote in his review of Farbak that Farbak was the "best cost manager in division." (Def.'s Reply SOF ¶ 6.) In 2007, Wheelock stated that he considered Farbak to be one of five individuals "critical to the company's successful turnaround of the Chemical Division." (*Id.* at ¶ 7.) Reviews of Farbak from 2004, 2005, and 2006 generally were positive. (*Id.* at ¶ 5.)

In 2007, Wheelock left Transport and John Miskimen ("Miskimen") took over his post and duties, including supervising Farbak. (Pl.'s Resp. SOF ¶¶ 11–12.) When Miskimen took over, one of his primary concerns was the Joliet facility's profitability. (*Id.* at ¶ 13; Def.'s Reply SOF ¶ 9, Ex. E, Miskimen Dep. 46:1–48:24, 50:1-21, Oct. 14, 2009.) Other concerns included

Farbak's ability to delegate and develop employees, customer satisfaction, and safety. (Def.'s Reply SOF ¶ 9, Ex. E, Miskimen Dep. 46:1–48:24, 50:1-21, 137:17–138:9; Pl.'s Resp. SOF ¶ 18.) Farbak's "primary problem with the profitability of the Midwest Terminal was an inability to hire drivers." (Pl.'s Resp. SOF ¶ 17.) Farbak claims that Miskimen never discussed "specific complaints" about Farbak's work performance with him. (Pl.'s Resp. SOF ¶¶ 22, 25, Ex. C., Farbak Dep. 57:5-23, 103, Sept. 18, 2009.)

Farbak testified that both he and Miskimen agreed that more drivers needed to be hired. (Farbak Dep. 48:8–49:12.) Miskimen, however, explained that he confronted Farbak about hiring and, while Farbak identified the problem as hiring, Miskimen told Farbak that driver retention was the primary problem. (Def.'s Statement of Facts ("Def.'s SOF") ¶ 18, Ex. E, Miskimen Dep. 67:1-16.) Miskimen did acknowledge that "two to three years ago" (i.e., 2006 and 2007) the company had problems hiring drivers because there was an industry-wide shortage of qualified drivers, (Pl.'s Resp. SOF ¶ 18, Ex. E, Miskimen Dep. 22:5-21), and that the Chicago market was a particularly difficult market. (Def.'s Reply SOF ¶ 23.) Farbak also thought that Transport could increase profitability by expanding its truck-washing business, but Miskimen did not agree. (Def.'s Reply SOF ¶ 12.)

Miskimen also stated that he thought the Midwest Facility needed an individual who could assume responsibilities when Farbak, the manager, was not around. (Def.'s SOF ¶ 21, Ex. E Miskimen Dep. 70-71.) Miskimen said he "was trying to get Mr. Farbak to bring along his dispatcher [Kyle Lukwinski] to fill that role." (*Id.*) Although Miskimen testified that Farbak did not "openly" resist the idea, Farbak never "made any moves to do it." (*Id.*) Additionally, Farbak did not designate a terminal leader when he took medical leave. (*Id.*)

Miskimen testified that, in the fall of 2007, he felt that the Joliet facility could not succeed with Farbak and, therefore, made the decision to fire him. (Pl.'s Resp. SOF ¶ 40.) To that end, in October or November of 2007, Miskimen reviewed about ten resumes and interviewed about four to five individuals to replace Farbak. (Pl.'s Resp. SOF ¶¶ 42-43.) Thus, Transport decided to terminate Farbak prior to his medical leave taken on March 10, 2008. (*Id.* at ¶ 53.) He stated his decision was based on safety, capacity, and customer services issues; the fact that these issues were not addressed; and a lack of supervision. (*Id.* at ¶ 41.) After Transport decided to terminate Farbak, the only decision remaining was whether it would hire a new manager from within or outside the company. (*Id.* at ¶ 53.) On February 14, 2008, Transport made its first offer to David Nevin ("Nevin")—a non-Transport employee—for the position of Midwest Terminal Manager at the Joliet Facility, which Nevin declined on February 20, 2008. (*Id.* at ¶ 44.)

Less than a month later, Farbak developed a knee infection, which was diagnosed on March 10, 2008. (Pl.'s Resp. SOF ¶¶ 46–48.) From that date until May 5, 2008, Farbak was on medical leave. (*Id.* at ¶ 48.) During this leave, on April 1, 2008, Transport was sold to Kennan Group.[2] (*Id.* at ¶ 51.) About a month later, on April 28, 2008, Miskimen sent an e-mail to employees at Transport explaining that the Chemical Division would be restructured. (*Id.* at ¶ 52.) This e-mail also explained that the company had hired a new dispatcher, and that the current Midwest Terminal Dispatcher would assume "the point role for Midwest operations in . . . Farbak's absence." (*Id.*) The e-mail did not mention that Farbak was being fired.

---

[2] The Court continues to refer to the relevant company as Transport throughout this Opinion.

On May 9, 2008, Transport terminated Farbak. (*Id.* at ¶ 55.) Miskimen met with Farbak to discuss his termination, and told Farbak that Transport was terminating his employment because of his "inability to hire drivers and Miskimen wanted to terminal to move forward." (*Id.* at ¶ 56.) Miskimen prepared the official termination form on May 19, 2008, noting that Farbak had been terminated on May 9, 2008, for "sub-par terminal performance." (Def.'s SOF, Ex. O.) Farbak sued Transport for violation of the FMLA in Illinois state court on November 3, 2008. Transport filed its notice of removal to this Court on December 16, 2008.

## II.     Summary Judgment Standard

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and affidavits show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court views all facts in the light most favorable to Farbak and draws all justifiable inferences in his favor. *Anderson*, 477 U.S. at 255. Not all factual disputes will preclude summary judgment; rather, a genuine issue of material fact will exist only where there is evidence such that a jury "could reasonably find for the [nonmoving party]." *Id.* The parties may not rely on mere allegations or speculation in arguing for or against summary judgment. *Argyropoulos v. City of Alton*, 539 F.3d 724, 737 (7th Cir. 2008). At the summary judgment stage, both sides must support their factual assertions with "competent evidence of a type otherwise admissible at trial." *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007). The burden of production is on the nonmovant to "set forth specific facts showing a genuine issue for

trial" or else face an entry of summary judgment. FED. R. CIV. P. 56(e)(2); *Warren v. Solo Cup Co.*, 516 F.3d 627, 629 (7th Cir. 2008).

## III. Discussion

Farbak contends that Transport violated his rights under the FMLA by terminating him for taking medical leave from March 10, 2008, through May 5, 2008. A plaintiff can prove that the defendant violated the FMLA by either the direct or indirect method of proof. *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 633 (7th Cir. 2009). Under the direct method, the plaintiff must prove that (1) he engaged in a protected activity; (2) the employer took adverse employment action against him; and (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action. *Id.* Under the indirect method of proof, the plaintiff can create a presumption of discrimination by establishing a prima facie case, demonstrating the following: the plaintiff (1) engaged in statutorily protected activity; (2) met his employer's legitimate expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Id.* at 634–35. If the plaintiff can prove these elements, the burden of production shifts to the employer to articulate a noninvidious reason for its actions. *Id.* If the employer does this, the burden shifts back to the plaintiff to show that these reasons are false and only a pretext for discrimination. *Id.*

Under either method, Farbak's claim fails. Transport offered evidence showing that the decision to terminate Farbak was made in the fall of 2007—well prior to his FMLA leave that began on March 10, 2008. Indeed, Miskimen reviewed resumes and interviewed people for the

position prior to March 10, 2008, even offering Farbak's job to Nevin in November of 2008. All of these events took place prior to Farbak's FMLA leave.

Instead of presenting any evidence that tends to controvert Transport's evidence, Farbak argues that the decision to terminate Farbak was not officially "made" until Transport fired Farbak on May 9, 2008. Farbak offers no legal or factual support for this claim, and for good reason: there isn't any. The uncontroverted facts show that Transport decided to fire Farbak in the fall of 2007, and even offered his position to Nevin in November of 2008.

Under these circumstances, there is no genuine issue of material fact as to whether Transport violated Farbak's rights under the FMLA. Farbak hasn't merely failed to show that "asserting or utilizing the protected conduct was a substantial or motivating factor in the [adverse] employment decision." (Pl.'s Resp. 6 (citing *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005).) Farbak has failed to present any facts that tend to support that conclusion. All of the facts show that Transport made the decision to terminate Farbak prior to his FMLA leave. Further, Farbak has offered no facts whatsoever that support the claim that Transport fired him for exercising his FMLA rights. Because Transport decided to terminate Farbak prior to his exercising his FMLA rights on March 10, 2008, it was legally impossible for Transport to retaliate against Farbak for engaging in protected activity.

## IV.  Conclusion

Based on the foregoing, this Court grants Defendant's Motion for Summary Judgment.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: April 21, 2010.